*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARTUR ZAWADA,

        Plaintiff-Appellant,

v

PATRICK HOGAN, GARY HARP a/k/a GARY
HARPE, MEGAN PAUL, and TOWNSHIP OF
HAMBURG,

        Defendants-Appellees.

UNPUBLISHED
April 28, 2022

No. 355422
Washtenaw Circuit Court
LC No. 19-001012-NO

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff Artur Zawada, proceeding *in propria persona*, appeals the trial court's order dismissing his claim for unlawful arrest. We affirm.

## I. BACKGROUND

In early December 2017, Frederick Cummins, who owns an automobile repair shop, gave plaintiff $1,500 and told him to drive a company vehicle to Toledo, Ohio, to purchase an automobile part. Plaintiff went to Toledo, but the part was not ready. Plaintiff then returned to his home in Washtenaw County. Although plaintiff later returned the company vehicle, he never purchased the automobile part. Plaintiff also did not return the money despite Cummins's repeated requests and threats to report plaintiff to law enforcement.

On December 14, 2017, Cummins reported the matter to the Hamburg Township Police Department in Livingston County where Cummins's business was located. On December 19, 2017, Officer Patrick Hogan and Sergeant Gary Harpe[1] went to plaintiff's home in Washtenaw

---

[1] Although the register of actions, the claim of appeal, and the trial court's final order indicate that this party is named "Gary Harp," the correct spelling is "Harpe."

County to investigate. Plaintiff invited them into his home. Although the parties dispute the sequence of events that preceded plaintiff's arrest,[2] plaintiff admitted that he told the officers that Cummins had given him $1,500 to purchase an automobile part for Cummins's business, that he never purchased the part, and that he did not return the money. Plaintiff also refused to return the money and told the officers that he had used the money to pay his bills. On the basis of plaintiff's admissions, the officers arrested plaintiff. The officers claimed that plaintiff resisted arrest, which required them to forcibly restrain plaintiff.

Plaintiff was charged in Livingston County with felony embezzlement, MCL 750.174(4)(a). Following a preliminary examination, plaintiff was bound over for trial on the embezzlement count and on an alternative charge of larceny by conversion, MCL 750.362. Pursuant to a plea agreement, plaintiff pleaded *nolo contendere* to a newly added count of failing to cooperate with a law enforcement officer, MCL 750.483, in exchange for the dismissal of the embezzlement and larceny counts. Plaintiff was ordered to pay restitution.

Plaintiff was also separately charged in Washtenaw County with two counts of resisting or obstructing a law enforcement officer, MCL 750.81d(1). Plaintiff moved to dismiss those charges on the ground that his arrest in Washtenaw County was unlawful because Sergeant Harpe and Officer Hogan were outside their jurisdiction and because they were not working in conjunction with local law enforcement or the Michigan State Police, contrary to MCL 764.2a. A district court judge denied the motion to dismiss, ruling that the officers were permitted to make a citizen's arrest under MCL 764.16. The charges in Washtenaw County were later dismissed.

Plaintiff thereafter filed a civil action against Sergeant Harpe and Officer Hogan, their supervisor Sergeant Megan Paul, and the Township of Hamburg. In relevant part, plaintiff's complaint included a claim for unlawful arrest against Sergeant Harpe, Officer Hogan, and Sergeant Paul. They moved for summary disposition, arguing that the arrest was lawful under MCL 764.16 and that Sergeant Paul was not involved in the arrest. The trial court granted the motion, and this appeal followed.

## II. DISMISSAL OF THE UNLAWFUL ARREST CLAIM

Plaintiff argues that the trial court erred by dismissing the unlawful arrest claim.[3] We disagree.

---

[2] Plaintiff references body camera footage. However, plaintiff has not provided this Court with the footage, and we conclude that it is not necessary to review the footage to resolve the issue on appeal.

[3] To the extent that plaintiff argues that he was falsely imprisoned, plaintiff did not plead this claim in the complaint. Even if plaintiff had pled such a claim, summary disposition would have been proper for the reasons discussed later in this opinion. See *Moore v City of Detroit*, 252 Mich App 384, 388; 652 NW2d 688 (2002) (noting that "[t]he essence of a claim of false imprisonment is that the imprisonment is false, *i.e.*, without right or authority to do so") (alteration in original; quotation marks and citation omitted).

## A. STANDARDS OF REVIEW

We review a trial court's interpretation of statutes de novo. *Wiesner v Washtenaw Co Community Mental Health*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 355523) (2022); slip op at 3. A trial court's decision regarding a motion for summary disposition is also reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). In this case, the trial court did not specify the grounds for granting the motion for summary disposition. However, the trial court relied on documentary evidence to support its decision. Accordingly, MCR 2.116(C)(10) is the appropriate basis for review. See *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010) ("Where the parties rely on documentary evidence, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10).") (Quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

## B. ANALYSIS

To establish an unlawful arrest claim, the plaintiff has the burden of proving (1) that the defendants participated in an illegal and unjustified arrest and (2) that the defendants lacked probable cause to make the arrest. *Walsh v Taylor*, 263 Mich App 618, 626; 689 NW2d 506 (2004).

There is no evidence that Sergeant Paul was involved in plaintiff's arrest. Consequently, the trial court properly dismissed the unlawful arrest claim against Sergeant Paul.

With respect to Sergeant Harpe and Officer Hogan, it is undisputed that they were outside their jurisdiction at the time of the arrest and that they did not have a warrant to arrest plaintiff. "As a general rule, peace officers who make a warrantless arrest outside their territorial jurisdiction are treated as private persons, and, as such, have all the powers of arrest possessed by such private persons." *People v Hamilton*, 465 Mich 526, 531; 638 NW2d 92 (2002), abrogated on other grounds by *Bright v Ailshie*, 465 Mich 770; 641 NW2d 587 (2002). MCL 764.16(b) permits a private person to make an arrest "[i]f the person to be arrested has committed a felony although not in the private person's presence." "The statute does not grant arrest authority where the [arrestee] has not committed a felony even if the private person has probable cause to believe the [arrestee] has committed a felony." *Bright*, 465 Mich at 773.

In this case, plaintiff was arrested for felony embezzlement in violation of MCL 750.174. In *People v Lueth*, 253 Mich App 670, 683; 660 NW2d 322 (2002), this Court explained:

> The elements of embezzlement by an agent, MCL 750.174, are (1) the money in question must belong to the principal, (2) the defendant must have a

relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of conversion, the defendant intended to defraud or cheat the principal.

On December 14, 2017, Officer Hogan spoke with Cummins, who indicated that plaintiff had taken $1,500 from him. On December 19, 2017, Officer Hogan told Sergeant Harpe that Cummins had "provided [plaintiff with] money" and that plaintiff "was supposed to take this money to go and purchase a part for the business and transport th[e] part back." However, plaintiff "never returned with the part or the money" and informed Cummins that he planned to leave the country.

Sergeant Harpe and Officer Hogan went to plaintiff's home "to get his version of the events." According to Sergeant Harpe, plaintiff invited him and Officer Hogan inside the home. Sergeant Harpe "informed [plaintiff] of the complaint and the circumstances and began to question him as to what his version of the events were." Plaintiff "corroborated the information that . . . Cummins provided. . . ." Specifically, plaintiff admitted that Cummins gave "him money to drive down to purchase a part, and he elected not to do that. He elected to keep that money instead of purchasing the part. . . ." Plaintiff also indicated that there was a "dispute" over the money because plaintiff believed that Cummins owed him between $700 and $750. Sergeant Harpe informed plaintiff that "he couldn't do that" because it "was against the law." After plaintiff was instructed that he needed to return all or part of the money, plaintiff indicated that he had already spent it. Because Sergeant Harpe believed that plaintiff "was a potential flight risk," he decided that it was "best to take him into custody." At that point, plaintiff was placed under arrest.

In sum, because the undisputed evidence establishes that plaintiff admitted that he had "actually committed a felony," the arrest under MCL 764.16(b) was lawful.[4] See *Bright*, 465 Mich at 774. To the extent that plaintiff argues that the arrest was unlawful because Sergeant Harpe and Officer Hogan illegally entered his home without a warrant, the undisputed evidence establishes that plaintiff permitted Sergeant Harpe and Officer Hogan to enter the home and that plaintiff voluntarily engaged in conversation with them.[5] See *Illinois v Rodriguez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990) ("The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained. . . .") (citations omitted). Consequently, the trial court did not err by granting summary

---

[4] Plaintiff complains that the officers did not tell him that he was subject to a citizen's arrest, but MCL 764.16 does not contain any requirement that the person making the citizen's arrest must inform the arrestee that the arrest is being conducted under the statute.

[5] Plaintiff argues that the "knock and announce" statute was violated. However, MCL 780.656 does not apply because defendants did not have a warrant.

disposition in favor of Sergeant Harpe and Officer Hogan on the unlawful arrest claim.  Given this holding, we need not consider the remainder of the arguments on appeal.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola